980 So.2d 745 (2008)
Jemone JOHNSON, Nakitha Johnson, Tyrone Hall and Ivory Hand
v.
MURPHY EXPLORATION AND PRODUCTION COMPANY, Joshua Paul Trahan, Liberty Mutual Insurance.
No. 2007-CA-0702.
Court of Appeal of Louisiana, Fourth Circuit.
March 5, 2008.
*746 Nat G. Kiefer, Jr., Kris P. Kiefer, Kiefer & Kiefer, Metairie, LA, for Plaintiff/Appellant.
Michael A. McGlone, Stephen C. Hanemann, Kean Miller Hawthorne, D'Armond McCowan & Jarman, L.L.P., New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge, DAVID S. GORBATY, Judge, ROLAND L. BELSOME).
*747 ROLAND L. BELSOME, Judge.
On or about May 13, 2002, the Sewerage & Water Board vehicle operated by Jemone Johnson was struck by a Murphy Exploration and Production Company ("Murphy") vehicle operated by Joshua Trahan. This lawsuit arose as a result of that collision. After a bench trial on the merits, the trial court rendered judgment in favor of the plaintiffs. The plaintiffs and defendants have filed appeals from that judgment.
The trial court judgment held defendants, Joshua Trahan, Murphy and Liberty Mutual Insurance Company (Liberty Mutual) liable for the plaintiffs' injuries. Mr. Johnson was awarded four hundred thousand dollars ($400,000.00) for his pain and suffering, one hundred twenty-nine thousand six hundred seventy two dollars and 10/100 ($129,672.10) for his past medical expenses, seventy-nine thousand nine hundred sixty-three dollars ($79,963.00) for his past lost wages, twenty-two thousand five hundred twenty seven dollars ($22,527.00) for his past lost fringe benefits, five thousand seven hundred ninety-five dollars ($5,795.00) for future medical expenses, five hundred eighty-six thousand five hundred eighty seven dollars and 45/100 ($586,587.45) in future lost wages, and one hundred sixty thousand seven hundred thirty-four dollars and 91/100 ($160,734.91) in future lost fringe benefits, expert fees, plus court costs and interest from date of judicial demand. Also the court awarded Nakitha Johnson twenty-five thousand dollars ($25,000.00) for loss of consortium.
On appeal Murphy and Liberty Mutual contend that the trial court erred in its determination of damages by: 1) allowing recovery of past loss of fringe benefits; 2) disregarding medical causation testimony and evidence; 3) awarding excessive general damages; and 4) disregarding expert testimony regarding plaintiffs work life expectancy. The defendants further contend that the trial court erred in finding that Jemone Johnson had 0% liability in causing the accident.
Jemone Johnson as appellant argues that the trial court erred in determining the amount of general damages and failing to award several components of damages including loss of future and past services therefore he is entitled to an additional six hundred thousand dollars ($600,000.00) in damages.
It is well established that the appellate court's standard of review is manifest error. Stobart v. State of La., Through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). Regardless of whether this Court, sitting as the trier of fact, would have found differently, the trial court's determination must not be disturbed absent a finding that the determination was clearly wrong or manifestly erroneous. Id. If there are two permissible views of the evidence, the trial court's choice cannot be manifestly erroneous. Id.
Prior to addressing the multitude of issues presented by the parties pertaining to damages, this Court will first focus on the appellant's argument regarding the trial court's finding of fault. After hearing all the testimony and evaluating the evidence the trial court found Murphy's driver, Joshua Trahan, 100% at fault for the collision which is the subject of this litigation.
Murphy and Liberty Mutual contend that even though the evidence presented indicates that Mr. Johnson entered the intersection on a green light, he should be accountable for some degree of fault for not seeing what he should have seen. Murphy and Liberty Mutual cite many cases in which a motorist with a green light was apportioned fault; there is no authority that mandates such an apportionment.
*748 A determination of fault is a factual finding. The trier of fact is vested with much discretion when allocating fault. Foley v. Entergy La., Inc., 04-1967, p. 3 (La.App. 4 Cir. 2/15/06), 925 So.2d 638, 641. The trial court was presented with ample evidence to absolve Mr. Johnson of fault including reports from the investigating officer and the S & WK. Accident Review Committee. We find this assignment of error to be without merit.
Turning now to the issues of causation and damages, the trial court was presented evidence that Mr. Johnson sustained multiple disc herniations in his lumbar spine requiring him to undergo epidural steroid injections, a lumbar discogram, and ultimately a two-level fusion at L3-4 and L4-5. Even after surgery Mr. Johnson was left with a disc rupture at L5-S1.
Murphy and Liberty Mutual argue that the trial court misinterpreted the law and evidence presented at trial when finding that Mr. Johnson's injuries were causally related to the motor vehicle accident of May 13, 2002. We disagree.
Mr. Johnson established causation through the testimony of his treating physicians. Dr. Hamsa, Mr. Johnson's orthopedist and an expert in orthopedic surgery, treated him from August 19, 2002 until April 26, 2006. Dr. Hamsa diagnosed Mr. Johnson with moderate disc rupture L-4, L-5; disc rupture at L3-4; and degeneration disc rupture at L-5, S-1. During the four years of treatment with Dr. Hamsa, Mr. Johnson underwent three MRIs, three epidural injections and a lumbar discogram prior to Dr. Hamsa recommending Mr. Johnson to neurosurgeon, Dr. Stefan Pribil for surgery. Dr. Hamsa related Mr. Johnson's lumbar spine injuries to the May 13, 2002 accident.
Mr. Johnson underwent a two level disc fusion at L3-4 and L4-5. The surgery was performed by Dr. Pribil. Consistent with Dr. Hamsa's opinion, Dr. Pribil also found Mr. Johnson's lumbar back injuries to be causally related to the May 13, 2002 accident. Dr. Pribil further determined that post surgery Mr. Johnson had a 15% permanent whole body anatomical impairment.
Post surgery he returned to treating with Dr. Hamsa, improved but still symptomatic. Dr. Hamsa assessed him as having a permanent anatomical impairment of 12% with functional restrictions of no lifting over twenty-five (25) pounds, no prolonged bending or stooping, no climbing stairs or ladders, no crawling and no prolonged standing or walking.
Clearly the trial court had sufficient evidence for a reasonable finding of causation. Therefore, that finding shall not be disturbed.
Murphy and Liberty Mutual further argue that the court erred in granting an excessive general damage award. The trial court awarded $400,000.00 for pain and suffering. In assessing the parties' assignments of errors as to the award of damages, this Court will not disturb the judgment unless the trier of fact abused its vast discretion. See Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) and Adler v. American National Property and Casualty Co., 99-3182 (La.App. 4 Cir. 2000), 769 So.2d 698. The trial court's award of damages will be affirmed absent a finding that the award is so high or so low in proportion to the injury that it "shocks the conscience." See Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
Mr. Johnson was thirty-two (32) years of age at the time of this accident. He was a hard worker that provided for his family by working overtime at his primary *749 job at the S & WK. while holding down a part-time job as a grill chef at the Ground Pati. Mr. Johnson testified that he maintained his working schedule in pain for as long he could prior to resigning from both positions. His treating physicians have evaluated his whole body impairment to be from 12%-15% and his activities are very, restricted. Although his back surgery was considered a success, his physicians testified to the life long discomfort he will experience. Furthermore, Mr. Johnson continues to suffer with a disc herniation at L5-S1.
Likewise Mr. Johnson testified as to how the injuries he sustained in the May 13, 2002 accident has impacted his life. He explained how difficult it is to sit for more than ten (10) or fifteen (15) minutes at a time. But most compelling is his testimony regarding his independence. For many years Mr. Johnson has clearly been a responsible provider for his family which includes his wife and six children; now he has to rely on others.
Given Mr. Johnson's age at the time of the accident and the debilitating effects of his injuries we find that the trial court was well within its discretion in its award of $400,000.00 in general damages. Nonetheless, the plaintiffs as appellants assert that the trial court erred when it awarded the $400,000.00 for "pain and suffering" without awarding other compensable damages under general damages. More specifically the plaintiffs seek to have the general damage award increased by: 1) $200,000.00 for past and present loss of enjoyment of life; 2) $200,000.00 for past and present permanent disability and impairment; 3) $100,000.00 for permanent scarring and inconvenience; and 4) $100,000.00 for past and future loss of services.
Although the additional damages sought by the plaintiffs fall within the category of general damages, we must find that the trial court was not clearly wrong in declining to award monies for those damages. The trial court's reasons for judgment addressed the calculations made and testified to for the loss of past and future services stating that Mr. Johnson had failed to produce sufficient evidence to recover for those damages. The reasons further stated that there were no receipts, bills or estimates to support a finding for past loss of services and nothing specific to Mr. Johnson regarding any future loss of service. The reasons for judgment did not address each element of general damages that the plaintiffs seek, but if a trial court's judgment is silent with respect to a claim or issue placed before the court, it is presumed that the court denied the relief requested. Loria v. Petunia's Restaurant, XXXX-XXXX, p. 3 (La.App. 4 Cir. 7/9/03), 852 So.2d 510, 513. This Court does not find that the award for general damages is woefully low or shockingly high. Thus, we decline to disturb the trial court's findings.
Murphy and Liberty Mutual also contend that the trial court erred when it determined that Mr. Johnson would have worked to at least the age of sixty-five (65), requiring his loss of future wages and future fringe benefits to be calculated under that pretense. Mr. Johnson's economist, Dr. Kenneth Boudreaux, testified that the work life average of an individual with Mr. Johnson's characteristics was fifty-six (56) years of age. However, Mr. Johnson demonstrated at trial that he had maintained steady employment since he was in the tenth grade. His work history established that he essentially worked two jobs for approximately seventeen (17) years. As an employee of the S & WB, he received promotions as well as awards or his work performance. Those awards included perfect attendance, employee of the *750 month, and employee of the year. He further testified that he wanted to work to at least the age of sixty-five (65), but ideally seventy (70), to increase his pension. Thus, the trial court was well within its discretion in determining that Mr. Johnson's work expectancy should be calculated using the age of sixty-five (65) rather than fifty-six (56).
Murphy and Liberty Mutual assert that the trial court erred in awarding past loss fringe benefits for the time that Mr. Johnson was still employed with full benefits. The trial court found that Murphy and Liberty Mutual failed to present evidence to refute Dr. Boudreaux's calculations or to demonstrate that Mr. Johnson had received those benefits during the time in question. Based on the record before us we cannot find that the trial court erred in its conclusion. Thus, we decline to reduce the judgment.
For the reasons set forth we affirm the court's findings in this matter.
AFFIRMED.